Ergholt agt. The Mayor.

# N. Y. COMMON PLEAS.

MARTIN L. ERGHOLT agt. THE MAYOR, &c., OF NEW YORK.

*New York (city of) — Negligence — City not responsible for injuries sustained by a person by reason of a defect in the highway in the " annexed district" — Laws of 1873, chapter 613 — Duty of keeping in repair roads, &c., in annexed district imposed upon department of parks.*

The mayor, aldermen and commonalty of the city of New York should not be held liable for injuries sustained by a person by reason of a defect in the highway in the " annexed district," because they were not guilty of negligence, the duty of keeping in repair the roads, streets and avenues in the annexed district not having been imposed upon them, but exclusively upon the department of parks, without any control by the said corporation.

VAN BRUNT, J., dissents upon the authority of the case of *Twogood* agt. *The Mayor.*

*General Term, December,* 1883.

*Before* C. P. DALY, *Ch. J.,* VAN BRUNT *and* J. F. DALY, *JJ.*

APPEAL by defendants from judgment of this court, entered upon verdict in favor of plaintiff for $25,000 damages for injuries sustained through the alleged negligence of defendants; also appeal from order denying defendants' motion for a new trial.

The case shows that on the night of February 27, 1881, which was dark, rainy, foggy and cold, the plaintiff was driving, in a covered rockaway drawn by a team of horses, from the city of New York to South Yonkers, along the public highway known as Broadway or old Kingsbridge road, when he accidentally drove into a ditch over a foot wide, and which extended across the highway at its junction with McComb street. The accident occurred in what is known as the annexed district, the territory separated from Westchester county and annexed to the city of New York by the act chapter 613 of the Laws of 1873.

*David J. Dean* and *Chas. Blandy*, for appellants.

*De Lancy Nicoll*, for respondents.

J. F. DALY, *J.*—The mayor, aldermen and commonalty of the city of New York should not be held liable for the injuries sustained by the plaintiff in this case, because they were not guilty of negligence, the duty of keeping in repair the roads, streets and avenues of the annexed district not having been imposed upon them, but exclusively upon the department of parks, without any control by the said corporation.

Although the act of annexation (1873, *chap.* 613) and the acts amendatory thereof make the annexed district a part of the city of New York, and vest its public property in the said city, and declare in general terms that the mayor, aldermen and commonalty succeed to the trusts and duties of the several towns embraced by the district, yet the same statutes divide the public duties to be performed within the district between the mayor, aldermen and commonalty of the city of New York and certain of its independent departments, assigning specific duties to each.

Thus in section 11 of said act it is enacted that " the mayor, aldermen and common council of the city of New York, and all officers elected or appointed under the charter of the city of New York, or under any law of this state authorizing the election or appointment of officers for the city and county of New York, and also school commissioners, trustees and inspectors appointed or to be appointed, shall exercise the same powers and shall perform the same duties in and over the territory hereby annexed, and in each ward thereof, in like manner and to the same extent as if said territory had always been a part of the city of New York, except as may be specially limited, excepted or extended by this act," while in section 14 of said act it is provided that " the commissioners of the department of public parks of the city of New York shall have the exclusive power to locate and lay out, construct

and maintain all public parks, streets, roads and avenues, and to devise plans for and locate all bridges and tunnels, and shall have exclusive control of the maintenance and construction of all public parks within the territory hereby annexed, and to construct and maintain all bridges, tunnels, sewers, streets, roads and avenues, so located and laid out," &c.

It is thus provided that the duty and power of maintaining — *i. e.*, keeping up or repairing — the streets, roads and avenues of the annexed district belongs to the park department commissioners to the exclusion of all other officers or bodies. The said department exercises, and has always exercised since its creation, independent powers derived, as in this case, directly from the legislature (*Laws of* 1857, *chap.* 771; 1859, *chap.* 363; 1861, *chap.* 88; 1864, *chap.* 275; 1865, *chaps.* 564, 565; 1866, *chap.* 367, *sec.* 7; 1866, *chap.* 757, *sec.* 3; 1867, *chap.* 580, *sec.* 2; 1867, *chap.* 697, *sec.* 6); and although the commissioners are appointed by the mayor, and the park department is one of the departments of the city government, yet, as the public duty to be performed by the commissioners in maintaining the roads, streets and avenues of the annexed district is not laid by the legislature upon the city, but upon the commissioners, and the city corporation has no private interest in that duty and derives no special benefit or advantage from it, the commissioners are not, with respect to that duty, servants nor agents of the municipality, and for their negligence, or that of their employes or officers, the corporation is not liable, even though such negligence be in the care of what is made by the act corporate or trust property of the city (*Maxmilian* agt. *The Mayor*, 62 *N. Y.*, 160–165, *and cases cited; Twogood* agt. *The Mayor, Com. Pleas Gen. Term, June*, 1882).

The case last cited (*Twogood* agt. *The Mayor*) has been quoted as sustaining the position that the duty of repairing the roads in the annexed district was imposed upon the city, notwithstanding that the act of 1873 confided the duty of maintaining such roads to the park commissioners. An

examination of the case will show the contrary. That was an action against the city to recover damages for injuries sustained by slipping on the ice on the sidewalk around Christopher street park, a place within the original corporate boundaries. The question was whether the city or the park department was bound to remove obstructions caused by ice and snow on that sidewalk. The opinions written by judges VAN HOESEN and BEACH explain the grounds upon which we held that that duty devolved upon the city. The city charter grants to the common council authority to regulate by ordinance the cleaning of streets, avenues, sidewalks and gutters, and the removal of snow and ice therefrom. There was no law imposing upon the park department the duty of cleaning the sidewalks and streets; that duty had from time immemorial rested with the corporation; any change involving so important a disposition of municipal obligation should be accomplished by clear enactment or a legislative intent not liable to misconstruction. The same charter clothed the park department with the management and control of all public parks and streets immediately adjoining above Fifty-ninth street, and public places which are of the realty of the city of New York, except buildings in the city hall park. The act of 1873, chapter 850, gives the department the right to determine lines of curbs and surface constructions in all streets and avenues within 350 feet from any public place or park, and provides that all moneys appropriated for the improvement and maintenance of public parks shall be deemed appropriated for the improvement and maintenance of the avenues and streets so bordering within that distance so far as the work of improvement and maintenance is done by said department. Judge BEACH held that the care and control of sidewalks and streets within that distance was not transferred from the city to the park department except for the restricted purpose of determining lines of curbs and other surface constructions, and that the application of funds for the maintenance of the streets, &c., relates to the maintenance

Ergbolt agt. The Mayor.

authorized by existing laws relating to the department. Judge VAN HOESEN held that the proper construction of the statutes was that the park department was to determine what was to be done to beautify the streets adjoining the parks, while the public works department (an agent of the municipality) was to perform the manual work of carrying out those plans, that the department had nothing to do with keeping the pavement in repair or good condition — that was a duty resting upon the city.

The case at bar is distinguished from the foregoing in the following points: There was a question of a transfer of duty from the city, which had always performed it theretofore, to the park department, and it was held that express enactment or clear intent must be shown to effect such shifting of responsibility. Here there is no transfer of duty from one body to another, but an original enactment as to new territory, distributing the public functions among various officers. The city never had any duty to perform with respect to these roads, avenues and streets of the annexed district, and it requires, equally, an express enactment or manifest intent on the part of the legislature to charge it with such duty. But the express enactment as to the duty of maining the streets is that the park department shall perform that duty, and no other body or officer is charged with the duty. The duties of the former local officers of the district are transferred to the city, except as specially excepted, limited or extended by the act, and the special conferring on the park department of exclusive powers as to maintaining the street and roads falls within the exception.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

C. P. DALY, C. J., concurs.

VAN BRUNT, J. — This action was brought to recover damages for injuries which the plaintiff had sustained by reason of a defect in the highway. The point raised upon this appeal

that the defendants are not responsible for this injury because the street in question was in charge of the park department, seems to have been determined adversely to the defendant by this court in the case of *Twogood* agt. *The Mayor.*

It is urged that the neglect of the plaintiff in unnecessarily exposing himself to the cold and rain after the accident, had contributed to produce his disability and debars him from recovery, because the law is inadequate to separate the damages which were directly caused by the accident from that which were caused by the plaintiff's unnecessary and negligent exposure to the cold and rain. The answer to this proposition seems to be that although the jury have found that this exposure contributed to the increasing of the injury, yet, under the circumstances of the present case, they have also found expressly that the plaintiff was not negligent in thus exposing himself. If the plaintiff had known or had reason to believe that such exposure would enhance his injuries, then, perhaps, the point might be successfully urged; but he not knowing how much he was injured, and not knowing that this exposure would aggravate the injuries received, cannot be held guilty of negligence because he did not do the very best thing which subsequent events showed should have been done under the circumstances. The fact that he was suffering from a throat trouble, so severe that he was forbidden to expose himself to bad weather, does not alter this question, as the throat trouble does not appear to have had any connection with the injuries, damages for which were recovered in this action. The plaintiff had a right to show what his earnings had been prior to the accident. They evidently were the result of his personal exertions. It is true he was aided by others, but no more so is the lawyer or the physician. His earnings were not speculative profits arising from mercantile adventures, but were in the nature of a salary or compensation for services performed.

In the case of *Walker* agt. *Erie Railroad Company* (63 *Barb.*, 260), a lawyer was allowed to show what his previous earnings had been, and in *Phillips* agt. *London and South-*

*western Railroad Company* (4 *L. R., Queen's Bench Division*, 406), a physician's previous income is expressly considered as an element in determining the amount of damag . The admission therefore of evidence as to the past earnings of the plaintiff was not error.

The objection to the question, "what was the condition of your health before that time?" is not well taken. A party certainly knows whether or not his health in past years has been good or not, and the opinion of an expert cannot be necessary upon such a question.

The defendants objected to the evidence offered as to the injury to the spine upon the ground that no intimation of such an injury was given in the complaint. The complaint alleged great bodily injuries generally. Under such allegation I see no reason why the plaintiff could not prove any bodily injury that he had received. If the defendants desired and were entitled to be apprised of the nature and extent of these injuries with greater particularity, they could easily have obtained a bill of particulars, whose very office is to supply just such information.

The case of *Stevens* agt. *Rodger* (25 *Hun*, 54) is not an authority to the contrary. In that case it is true that it was held to be error to allow testimony that paralysis of the right arm had resulted. The complaint alleged specific injuries and the plaintiff did not rely upon a general allegation of bodily injuries, and paralysis of the arm was not one of the injuries mentioned. The complaint contained a bill of particulars and the plaintiff was held to it. By the admission of the evidence in this case the rule that special damages, unless particularly alleged, cannot be recovered, was not infringed upon, the proof given relating to a bodily injury resulting from the accident and the direct result of such injury.

The question involved in the exception at folio 755 and the refusal to charge the twenty-second, twenty-fourth and twenty-sixth requests, have hereinbefore been discussed.

It cannot be that where a plaintiff has suffered an injury

and without any negligence upon his part, and without in any manner having any suspicion that he thereby is increasing his injuries, does an act which aggravates them, that he is debarred of any recovery, which would be the result in the case at bar if the rule contended for by the defendants should prevail. If the defendants could have shown what part of the injuries were occasioned by the fall and what part by the subsequent exposure perhaps no recovery could be had for the latter, but the fact that it was impossible to make such a separation affords no reason for allowing the wrongdoer to escape the penalty which the law fixes upon his negligence.

The exception at folio 771 is not well taken, because it is in proof that the city had actual notice of this defect on February nineteenth, and the accident occurred on February twenty-seventh, and the question was expressly left to the jury whether or not the city had acted with a proper and reasonable degree of promptitude in making repairs after receiving such notice.

Judgment and order appealed from should be affirmed, with costs.